**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Ifrah Muhumed Awal,                                     No. 24-cv-382 (KMM/ECW)

       Plaintiff,

v.

United States Department of State; Antony                **ORDER**
Blinken, *United States Secretary of State*;
Vincent Spera, *Consul General of the*
*United States at the U.S. Consulate in*
*Johannesburg, South Africa*;

       Defendants.

---

In her complaint, Plaintiff Ifrah Muhumed Awal alleges that Defendants[1] have violated the Administrative Procedure Act by unreasonably delaying making a final ruling on her husband's immigrant visa petition. Defendants move to dismiss Ms. Awal's complaint for failure to state a claim. For the reasons that follow, the Defendants' motion is granted in part and denied in part.

---

[1] Defendants are the United States Department of State; the U.S. Consulate in Johannesburg, South Africa; Anthony Blinken, the United States Secretary of State; and Vincent Spera, the Consul General of the United States of the Consulate in Johannesburg.

## BACKGROUND

### I.    The Complaint

Ifrah Muhumed Awal is a United States citizen,[2] who is married to a Somali man named Ibraam Abdi Bashiir. Ms. Awal lives in the United States, and Mr. Bashiir currently lives in South Africa. Ms. Awal and Mr. Bashiir want to be reunited in America. To that end, Awal filed a visa application for Bashiir on April 2, 2020. She paid the required filing and visa fees. Compl. ¶¶ 10, 13–14. "USCIS purportedly approved [Awal's] I-130 spouse visa petition on April 24, 2022." Compl. ¶ 15. As a result, the matter was transferred to the State Department's National Visa Center ("NVC") for processing. The NVC completed its processing and sent the matter to the U.S. Consulate in Johannesburg. Compl. ¶¶ 15–16.

On February 8, 2023, Mr. Bashiir had a visa interview with the State Department. Compl. ¶ 17. At the conclusion of the interview, Bashiir did not receive a visa. Compl. ¶ 17. Awal's additional efforts to obtain a decision have been unsuccessful. Compl. ¶ 18. She alleges that after the interview, Mr. Bashiir's application has been in "administrative processing" for an unreasonably long time. Compl. ¶ 30.

Ms. Awal's complaint contains two "Claims for Relief." Compl. ¶¶ 19–37. In her First Claim for Relief, Ms. Awal alleges that Defendants have unreasonably delayed adjudication of Mr. Bashir's visa application, authorizing the Court to compel the responsible agency to take appropriate action under the Administrative Procedure Act

---

[2] Defendants assert that the information available to the State Department indicates Ms. Awal is a lawful permanent resident. Nevertheless, Defendants treat her as a citizen for purposes of the motion to dismiss. *See also* Awal Aff. ¶ 1 (Doc. 14-2).

("APA"), 5 U.S.C. § 706(1). *Id.* ¶¶ 20–21. In part, Ms. Awal's APA claim asserts that the State Department's unreasonable delay has been caused by Defendants' use of the Department of Homeland Security's Controlled Application Review and Resolution Program ("CARRP"). *Id.* ¶¶ 23–29. In her Second Claim for Relief, Ms. Awal alleges that Defendants' delay has violated her own due process rights under the Fifth Amendment to the United States Constitution. *Id.* ¶¶ 34–37. Ms. Awal seeks to compel Defendants to adjudicate Mr. Bashiir's visa petition through a writ of mandamus, and declaratory and injunctive relief.[3]

## II. Evidentiary Submissions

Each side has filed a declaration concerning Defendants' motion to dismiss. Defendants filed the declaration of Matthew McNeil, an attorney adviser in the Office of Assistant Legal Adviser for Consular Affairs for the State Department. Mr. McNeil discusses the information available in the Consular Consolidated Database ("CCD") regarding the visa application at issue in this case. According to McNeil, the CCD's data indicates that Mr. Bashiir was interviewed at the Embassy in Johannesburg on February 8, 2023, and a consular officer refused his application that day because the officer was not satisfied that he was eligible for a visa. The consular officer determined that additional security screening was warranted. McNeil Decl. ¶ 9. Consular staff then sent a list of

---

[3] In her prayer for relief, in part, Ms. Awal asks the Court to "issue a writ of mandamus compelling Defendants to issue an immigrant visa to [Mr.] Bashiir." Compl., Prayer for Relief ¶ 7. The Court cannot provide that relief, regardless of the outcome of Plaintiff's unreasonable-delay claims. *See* 8 U.S.C. § 1252(a)(2)(B)(ii) (providing that "no court shall have jurisdiction to review" decisions committed to the discretion of the Attorney General or the Secretary of Homeland Security).

questions to Mr. Bashiir on February 9, 2023. McNeil Decl. ¶ 10. The Embassy in Johannesburg received Mr. Bashiir's answers to the questions on February 17, 2023. As of April 12, 2024, additional security screening remained ongoing. However, according to Mr. McNeil, Mr. Bashiir's visa application remains refused under the terms of the Immigration and Nationality Act. McNeil Decl. ¶¶ 11–12.

In Ms. Awal's affidavit, she explains how the delay in processing the visa application for her husband has caused her significant challenges. Awal Aff., *passim*. She has a 4-year-old child with Mr. Bashiir, and Bashiir's absence takes a toll on the child's emotional well-being and her own. *Id.* ¶¶ 8–9. After traveling to South Africa in 2023, Ms Awal also found out she was pregnant. *Id.* ¶ 10. In combination with her pregnancy, she "encountered health issues that resulted in job loss" because she was unable to return from South Africa on time. *Id.* Mr. Bashiir's absence places a strain on the family's financial stability, and Ms. Awal does not have access to transportation, which makes it difficult for her to find work or educational opportunities. *Id.* ¶¶ 11–13.

## DISCUSSION

In their motion to dismiss, Defendants argue that Ms. Awal lacks standing to assert her due process claim and to challenge the State Department's purported use of CARRP. Defendants also argue that Ms. Awal's unreasonable-delay claim should be dismissed for failure to state a claim.

## I.    Legal Standards

### A.  Failure to State a Claim

Defendants bring their motion to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(1) motion challenges the Court's subject-matter jurisdiction over an action, and Rule 12(b)(6) motion raises the issue of whether a complaint has failed to state a claim. To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require the inclusion of "detailed factual allegations" in a pleading, but the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). In applying this standard, the Court must assume the facts in the complaint to be true and take all reasonable inferences from those facts in the light most favorable to the plaintiff. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986); *see Waters v. Madson*, 921 F.3d 725, 734 (8th Cir. 2019). But the Court need not accept as true any wholly conclusory allegations or legal conclusions that the plaintiff draws from the facts pled. *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019).

### B.  Subject-Matter Jurisdiction

A plaintiff must show that she has standing to sue to demonstrate that there is subject-matter jurisdiction over the claim. *Quiles v. Union Pac. R.R. Co., Inc.*, 4 F.4th 598, 603 (8th Cir. 2021); *see also Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016)

("[I]f a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction."). "To establish standing to sue in federal court, a plaintiff 'must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.'" *McNaught v. Nolen*, 76 F.4th 764, 768–69 (8th Cir. 2023) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

On a motion to dismiss for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), first courts "must distinguish between a 'facial attack' and a 'factual attack'" on the courts' jurisdiction. *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990). A facial attack assumes that, even if all the facts alleged were true, the court still lacks subject-matter jurisdiction; a factual attack, on the other hand, "challenges the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, may be considered." *See Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). When the defendant raises a facial attack, courts apply the same standard involved in a motion to dismiss under Rule 12(b)(6). *Osborn*, 918 F.2d at 729 n.6. Here, Defendants raise a facial attack to Ms. Awal's standing.[4] Therefore, in evaluating any issues of standing, the court accepts the factual allegations in the

---

[4] Defendants contend that the information contained in Mr. McNeil's declaration is consistent with and necessarily embraced by the allegations in the complaint. *See* Defs.' Mem. 6 n.5 (Doc. 10). Further, Defendants suggest that "the Court need not rely on McNeil's Declaration" in assessing their motion. *Id.* Because Defendants do not ask the Court to consider matters outside the pleadings, or challenge the truthfulness of underlying facts contained in Plaintiff's complaint, the Court understands the Defendants' challenge as a facial, rather than a factual attack on subject-matter jurisdiction.

complaint as true and determines whether they adequately allege the court has subject-matter jurisdiction over the case. *Menchaca*, 613 F.2d at 511.

## II.    Analysis

### A. Due Process

Ms. Awal's due process claim is premised on her own "right to fundamental fairness in administrative adjudication [that is] protected by the Due Process Clause of the Fifth Amendment to the United States Constitution." Compl. ¶ 35. She asserts Defendants' "combined delay and failure to act . . . has violated [her] due process rights. . . ." *Id.* ¶ 36. The parties dispute whether Ms. Awal has standing to assert a due process claim.

After the parties completed briefing on the motion to dismiss, the Supreme Court decided *Department of State v. Muñoz*, 144 S. Ct. 1812 (2024). In *Muñoz*, the plaintiff, a U.S. citizen, wished to unite with her spouse, a Salvadoran citizen, in America. To that end, the couple took steps to obtain an immigrant visa for the plaintiff's husband. *Id.* at 1818. After several interviews with a consular officer in San Salvador, the officer denied the husband's application because he had tattoos that the officer believed signified membership with MS-13, an international gang. *Id.* at 1818–19. The State Department did not provide such a detailed explanation to the couple when it informed them of the denial, and simply cited 8 U.S.C. § 1182(a)(3)(A)(ii), a section of the Immigration and Nationality Act ("INA") that prohibits noncitizens from entering the U.S. with the principal goal of engaging in unlawful activity. *Id.* at 1819.

In her complaint, the plaintiff in *Muñoz* alleged that the State Department had "abridged [her] constitutional liberty interest in her husband's visa application by failing

to give a sufficient reason why [he] is inadmissible" under the cited INA provision. *Id.* at 1819 (citing 8 U.S.C. § 1182(a)(3)(A)(ii)); *see also id.* at 1821 (explaining that the plaintiff "argue[d] that the State Department abridged her fundamental right to live with her spouse in her country of citizenship—and that it did so without affording her the fair procedure guaranteed by the Fifth Amendment"). The Ninth Circuit Court of Appeals agreed that the plaintiff had a protected liberty interest in her husband's visa application, and held that the State Department failed to give the plaintiff a "facially legitimate and bona fide reason for denying her husband's visa." *Id.* at 1819–20. The State Department petitioned for certiorari. *Id.* at 1820.

The Supreme Court reversed. The *Muñoz* Court observed that Ms. Muñoz had characterized her claim as one based on procedural due process and that she had a fundamental right "to *reside with her noncitizen spouse in the United States*." *Id.* at 1822 (emphasis in original). The Court held "that a citizen does not have a fundamental liberty interest in her noncitizen spouse being admitted to the country." *Id.* at 1821. The Court further explained that if Ms. Muñoz had claimed that the denial of her husband's visa "violated her substantive due process right to bring her noncitizen spouse to the United States," such a claim "cannot succeed . . . because the asserted right is not a longstanding and deeply rooted tradition in this country." *Id.* at 1827 (internal quotation marks omitted).

Because *Muñoz* forecloses Ms. Awal's due process claim, the Defendants' motion to dismiss that claim is granted.[5]

## B. CARRP

The Court turns next to Ms. Awal's allegations concerning CARRP. Ms. Awal asserts that the State Department and the Department of Homeland Security ("DHS") work together when carrying out background and security investigations. Compl. ¶ 23. Such investigations are allegedly delayed by administrative processing pursuant to a DHS policy known as CARRP; Ms. Awal alleges that used CARRP to delay adjudication of Mr. Bashiir's application because he is from a predominantly Muslim country. *Id.* ¶¶ 24–25. According to Ms. Awal, CARRP is not a program approved by Congress, nor is it the subject of notice-and-comment rulemaking, yet it prohibits USCIS field officers from approving an application with a potential "national security concern." *Id.* ¶ 27. CARRP relies on definitions of national security concerns that are far broader than the ineligibility criteria contained in the INA. *Id.* ¶ 28. As a result, individuals who pose no security concerns at all are improperly excluded from having their visa applications approved. *See id.* Ms. Awal alleges that USCIS data shows that 19,000 people from twenty-one Muslim-

---

[5] In their briefing, Defendants characterized this argument as one of Article III standing because Ms. Awal could not show "an injury that is fairly traceable to Defendants' conduct, [nor that the injury was] likely to be redressed by a favorable decision of the court." Defs.' Mem. 7. However, the Court is not persuaded that Defendants' argument concerning Ms. Awal's due process claim is clearly a question of standing. For example, *Muñoz* forecloses Ms. Awal's due process claim because a citizen has no fundamental liberty interest in living with her noncitizen spouse in the United States, but the Supreme Court's decision in *Muñoz* does not mention Article III standing. Instead, the *Muñoz* Court treated the lack of such an interest as a failure to allege an essential element of any due process claim—the existence of a constitutionally protected interest. Accordingly, the Court is not persuaded that this issue truly implicates Plaintiff's Article III standing or, by extension, this Court's subject-matter jurisdiction.

majority countries were subjected to CARRP between fiscal year 2008 and 2012. *Id.* ¶ 29. Ms. Awal asks the Court to declare that CARRP "violates the INA and its implementing regulations," the U.S. Constitution, and the APA; and that Defendants violated the APA by adopting CARRP without following the procedures for notice-and-comment rulemaking. *Id.*, Prayer for Relief ¶ 2. In addition, she asks the Court to enjoin Defendants and anyone acting in concert with them from applying CARRP to the processing of Mr. Bashiir's visa application and to order Defendants to rescind CARRP. *Id.*, Prayer for Relief ¶¶ 3–4.

As noted, Defendants argue that Ms. Awal lacks standing to challenge CARRP. The Court agrees that Ms. Awal has "not alleged enough to establish standing to challenge CARRP." *Nusrat v. Blinken*, No. 21-cv-2801 (TJK), 2022 WL 4103860, at \*3 (D.D.C. Sept. 8, 2022); *see also Al-Saadoon v. Barr*, 973 F.3d 794, 804 (8th Cir. 2020) (affirming dismissal of CARRP claim failed because the complaint provided only "labels and conclusions, based on speculation" that CARRP impacted USCIS's determination of their applications) (quoting *Karnatcheva v. JPMorgan Chase Bank*, 704 F.3d 545, 548 (8th Cir. 2013)). Other courts have found plaintiffs failed to adequately allege standing to challenge CARRP based on allegations nearly identical to those at issue here. *See Nusrat*, 2022 WL 4103860, at \*3 (concluding that plaintiff lacked standing where she alleged "that her parents are from a 'predominantly Muslim country' and that 'upon information and belief' CARRP caused the claimed delay" because there were "no facts suggesting that CARRP affected her parents' applications specifically"); *see also Begum v. United States Dep't of State*, No. 1:22-cv-00478-JMC, 2022 WL 116575703, at \*3–5 (D. Md. Oct. 31, 2022)

(same); *Giliana v. Blinken*, 566 F. Supp. 3d 13, 23–24 (D.D.C. 2022) (same); *Mahmood v. U.S. Dep't of Homeland Sec.*, No. 21-cv-1262 (RC), 2021 WL 5998385, at *5–6 (D.D.C. 2021) (same); *Ghadami v. United States Dep't of Homeland Sec.*, No. 19-cv-00397 (ABJ), 2020 WL 1308376, at *6 (D.D.C. Mar. 19, 2020) (same).

Consistent with these persuasive cases, to the extent Ms. Awal's unreasonable-delay claim is premised on Defendants' alleged use of CARRP, the Court concludes that she fails to demonstrate that she has standing for such a challenge.

**C. APA and Mandamus**[6]

Finally, the Court turns to Ms. Awal's claim that the Defendants' alleged failure to finally adjudicate Mr. Baashir's request for a visa violates the APA and entitles her to a writ of mandamus due to unreasonable delay. Under the Mandamus Act, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. Under the APA, "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b). Further, the APA permits courts to compel agency action that is "unreasonably delayed." 5 U.S.C. § 706(1). Under § 706(1), "a delay cannot be unreasonable with respect to action that is not required" by law. *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63 n.1 (2004); *id.* at 64 ("[A]

---

[6] The Court discusses Ms. Awal's APA claim and her claim under the Mandamus act together because the analysis is the same. *See Burni v. Frazier*, 545 F. Supp. 2d 894, 903 (D. Minn. 2008).

claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*.") (emphasis in original).

**TRAC Factors**

In evaluating whether an agency has unreasonably delayed making a final decision on a plaintiff's application, courts frequently apply a multi-factor test established in *Telecommunications Research and Action Center v. Federal Communications Commission*, 750 F.2d 70 (D.C. Cir. 1984) ("*TRAC*"). Defendants argue that Ms. Awal fails to state a plausible unreasonable-delay claim based on application of the *TRAC* factors. The *TRAC* factors include:

> (1) The time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80; *Rambang v. Mayorkas*, No. 11-cv-3454 (JRT/JJK), 2012 WL 2449927, at *5–6 (D. Minn. June 27, 2012) (quoting *TRAC*, 750 F.2d at 80).

Defendants argue that Ms. Awal fails to state an APA or mandamus claim because application of the *TRAC* factors to facts alleged in the complaint demonstrates that any alleged delay in this case is not unreasonable as a matter of law. Defs.' Mem. at 15–21. Having reviewed the complaint and the entire record in this case, the Court concludes that

it cannot resolve the question of whether the delay alleged is unreasonable as a matter of law at the motion-to-dismiss stage. While it is true that some courts have found unreasonable-delay claims capable of resolution based on the TRAC factors on a Rule 12(b)(6) motion, *e.g.*, *Oduor v. Blinken*, No. 1:23-cv-00908, 2024 WL 1406548, at *3–5 (D.D.C. Mar. 29, 2024), here, the Court finds that the determination of the merits of the unreasonable-delay claim would be premature without the benefit of a more fully developed record.

As other courts have observed, "[r]esolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 451 (6th Cir. 2022) (quoting *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003)). Here, Mr. Bashiir's interview took place in February 2023, and he was eligible to receive an interview even earlier, in November 2022. Despite Defendants' arguments to the contrary, the Court cannot resolve whether the nearly two-year delay in finally resolving Bashiir's application is reasonable based on a "rule of reason." Defendants point to no binding authority establishing that a delay of 24 months cannot, as a matter of law, be unreasonable. The Court also is not able to assess, on this record, how to balance the "nature and extent of the interests prejudiced by the delay," or the "effect of expediting delayed action on agency activities of a higher or competing priority." *TRAC*, 750 F.2d at 80. The final determination of such issues should await a more fully developed record. *See Sawad v. Frazier*, No. 07-cv-1721, 2007 WL 2973833, at *5 (D. Minn. Oct. 9, 2007) ("What constitutes an unreasonable delay in the

context of immigration applications depends to a great extent on the facts of a particular case.") (quoting *Yu v. Brown*, 36 F. Supp. 2d 922, 935 (D.N.M. 1999)); *Feng v. Beers*, No. 2:13-cv-2396 (JAM/DAD), 2014 WL 1028371, at *8 (E.D. Cal. Mar. 14, 2014) (denying summary judgment motions based on application of the *TRAC* factors because the record was insufficiently developed); *Rodriguez v. Nielsen*, No. 16-cv-7092 (MKB), 2018 WL 4783977, at *20 (E.D.N.Y. Sept. 30, 2018) ("The Court has insufficient information upon which to identify 'the source of delay,' the agency's allocation of its resources, and the extent to which Defendants may have 'participated in delaying the proceedings.'").

Accordingly, Defendants' motion to dismiss Ms. Awal's unreasonable-delay claim is denied to the extent it relies on application of the *TRAC* factors.

### *Final Decision and* **Karimova**

The Defendants also seek dismissal on the ground that when a visa application is "refused" following a consular interview, there is no further obligation on the State Department, and therefore, there can be no claim for unreasonable delay under the APA. Not long after the Court held a hearing on the motion to dismiss, the D.C. Circuit issued an unpublished, per curiam decision in *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852 (D.C. Cir. July 24, 2024). Defendants filed a letter briefly discussing the holding of *Karimova* and asserting that it constitutes supplemental authority relevant to the motion. As explained below, the Court will not dismiss Ms. Awal's unreasonable-delay claim based on this argument or the reasoning of *Karimova*.

To understand *Karimova* and its significance to the issues in this case, a brief background on the relevant immigration laws is useful context. A noncitizen needs an

immigrant visa to enter the United States. *Muñoz*, 144 S. Ct. at 1818 (citing 8 U.S.C. § 1181(a)); *Scialabba v. Cuellar De Osorio*, 573 U.S. 41, 46 (2014) (citing 8 U.S.C. § 1181(a)). For immediate relatives of citizens, such as noncitizen spouses, the visa process is more streamlined than for family members of lawful permanent residents. *Muñoz*, 144 S. Ct. at 1818. In the first step, "[t]he citizen relative must . . . file a petition with U.S. Citizenship and Immigration Services (USCIS), an agency housed within the Department of Homeland Security, to have the noncitizen classified as an immediate relative." *Id.* USCIS reviews the petition and supporting documentation to make sure that the noncitizen seeking the visa has the relationship to the citizen as claimed. 8 U.S.C. §§ 1154(a)(1)(A)(i), (a)(1)(B)(i)(I), (b); 8 C.F.R. § 204.1(a)(1).

"If USCIS approves the petition, then the noncitizen may apply for a visa." *Muñoz*, 144 S. Ct. at 1818 (citing 8 U.S.C. §§ 1201(a), 1202(a)). The immediate relative noncitizen provides documentation in support of the application for a visa and a consular officer schedules an in-person interview that takes place abroad. *Id.* (citing §§ 1201(a), 1202). The consular officer who interviews the noncitizen spouse "makes the final admission decision." *Id.* at 1829 (Sotomayor, J., dissenting) (citing 8 U.S.C. §§ 1201, 1202(f)). A consular officer who denies a visa application, provides the noncitizen with written notice of the decision that references "'the specific provision or provisions of law under which the alien is inadmissible.'" *Id.* at 1818 (quoting § 1182(b)(1)).

The applicable regulation provides:

> When a visa application has been properly completed and
> executed before a consular officer in accordance with the
> provisions of the INA and the implementing regulations, the

> consular officer must issue the visa, refuse the visa under INA
> 212(a) or 221(g) or other applicable law or, pursuant to an
> outstanding order under INA 423(d), discontinue granting the
> visa.

22 C.F.R. § 42.81(a). However, "[i]f the ground of ineligibility may be overcome by the presentation of additional evidence and the applicant indicates an intention to submit such evidence," the consulate will retain the documentation originally filed for a year, during which time the visa applicant can try to overcome the refusal. 22 C.F.R. § 42.81(b); *id.* § 42.81(e) (providing that a case shall be reconsidered if the applicant provides further evidence tending to overcome the ground of ineligibility within a year from the date of refusal).

In *Karimova*, the Court of Appeals of the District of Columbia Circuit found a plaintiff failed to adequately state a claim that a consular officer had a duty to act where she did not receive a visa upon the completion of her consular interview. The plaintiff, Gulshana Karimova, an Azerbaijani citizen and resident, applied for a visa to enter the United States in October 2019, and she had an interview with a consular officer at the U.S. Embassy in Georgia in 2020. *Karimova*, 2024 WL 3517852, at *2. Following the interview, the consular "officer officially 'refused' her application," and "then placed her application in 'administrative processing in order to verify qualifications for her requested visa.'" *Id.* (brackets omitted). A year later, Ms. Karimova filed a suit in federal court alleging that the consular officer unreasonably delayed adjudication of her visa application under the APA. *Id.* The district court granted the government's motion to dismiss her APA claim, and on appeal, the D.C. Circuit affirmed the dismissal. *Id.* at *2–3. Essentially, the *Karimova* court

reasoned that a federal court can only compel agency action under the APA where the agency is required by law to take some discrete action, and once the consular officer decided not to issue the visa at the conclusion of Ms. Karimova's interview, the officer no longer owed her any duty. *Id.* at *2, *3–6.

By pointing the Court to the *Karimova* decision, the Defendants want the Court to draw the conclusion that if a visa applicant (like Mr. Bashiir) has had a consular interview, and his application is "refused," yet placed into administrative processing, then there can be no claim for unreasonable delay under the APA because the State Department no longer has a legal obligation to adjudicate the petition. For several reasons, the Court will not reach that conclusion here. First, there is no Eighth Circuit precedent with the same holding as *Karimova*; nor does there appear to be any binding precedent adopting the *Karimova* court's reasoning or its interpretation of § 555(b). Instead, *Karimova* is an unpublished decision from a court that does not control the outcome here, and this Court is not required to follow its holding or its reasoning.

Second, and more importantly, this Court is not persuaded on the record before it in this case that a consular officer's purported "refusal" of a visa application operates as a final agency decision that concludes the agency's legal obligation to adjudicate the application when the officer places the application in administrative processing. The *Karimova* decision does not identify a statutory provision that plainly states a consular officer's "refusal" at the conclusion of the interview concludes the agency's obligation to finally adjudicate the decision. And although the State Department's regulations state that a "consular officer must issue the visa, or refuse the visa," 22 C.F.R. § 42.81, Defendant

17

does not point to a regulation stating that such a "refusal" constitutes the final agency action. It appears that the *Karimova* court reached that conclusion based primarily on the provisions of the State Department's Foreign Affairs Manual. *See* 2024 WL 3517852, at *1–2 & n.1 (citing provisions in the Manual).[7] However, it is far from clear whether the Foreign Affairs Manual has any legally binding effect, and *Karimova* does not illustrate how the interpretation reflected in the Manual is consistent with the language of any Act of Congress. *Cf. Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) and emphasizing that courts are obligated to declare what the law is without deferring to agency's interpretations of ambiguous laws).

Moreover, even under the *Karimova* court's description, the function served by the "administrative processing" limbo into which Mr. Bashiir's application has been placed appears, practically speaking, to be that he still can overcome the "refusal" of his application through the submission of additional information to the consular officer. *See Karimova*, 2024 WL 3517852, at *2 (citing 9 Foreign Affairs Manual § 306.2-2(A)(a)). Both Ms. Awal's complaint and Mr. McNeil's declaration indicate that the consular officer believed "additional security screening was required," Mr. Bashiir responded to at least one list of questions from consular staff, the Embassy in Johannesburg received those answers, and "additional screening is ongoing." McNeil Decl. ¶¶ 9–12; Compl. ¶ 30. With respect to the *Karimova* court, this is the opposite of the agency having already

---

[7] 9 Foreign Affairs Manual, *Visas*, https://fam.state.gov/Volumes/Details/09FAM.

"conclude[d] a matter presented to it." 5 U.S.C. § 555(b). Simply calling the post-interview decision "final" does not make it so.

This conclusion is further buttressed by the results of a case status review on the State Department's website using Mr. Bashiir's Immigrant Visa Case Number. The result reveals that the agency lists his application as "Refused," but it also states:

> A U.S. consular officer has adjudicated and refused your visa application. Please follow any instructions provided by the consular officer. If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. ***You will receive another adjudication once such processing is complete***. Please be advised that the processing time varies and that you will be contacted if additional information is needed. For more information, please visit TRAVEL.STATE.GOV or the website for the Embassy or Consulate at which you made your visa application.
> For more information, please visit TRAVEL.STATE.GOV.

U.S. Dep't of State, Consular Electronic Application Center, Visa Status Check, https://ceac.state.gov/ceacstattracker/status.aspx (emphasis added). If the State Department informs an applicant that he "will receive another adjudication" when the administrative processing is complete, then the State Department is essentially taking the position that the matter submitted to the agency has not been concluded while administrative processing is ongoing. *Ebrahimi v. Blinken*, No. 23 C 3867, 2024 WL 2020038, at *5 (N.D. Ill. May 3, 2024) ("As other courts have noted, the State Department's use of 'will' in this communication all but guarantees the applicant another adjudication once administrative processing is complete.") (cleaned up); *Billoo v. Baran*, No. 2:21-cv-05401-CBM-(JPRX), 2022 WL 1841611, at *4 (C.D. Cal. Mar. 18, 2022) ("Pursuant to the Department of State's

own statements and instructions on their website, the Court finds that these facts demonstrate that Mr. Ahmadzai has not received a final determination on his visa application.").

Other courts have similarly concluded that when an application is in administrative processing, there has been no final decision, and the agency still has an obligation to adjudicate the application in a timely manner. *See Jafarzadeh v. Blinken*, No. 1:23-CV-00770-KJM-CDB, 2024 WL 3937417, at *4 (E.D. Cal. Aug. 26, 2024) (declining to follow *Karimova* as inconsistent with prior caselaw and rejecting as "unpersuasive" the government's argument that a final decision had been made despite ongoing administrative processing); *Sharifi v. Blinken*, No. 1:23-CV-5112-OEM, 2024 WL 1798185, at *3 (E.D.N.Y. Apr. 25, 2024) ("Here, in refusing Mahin's visa application for further administrative processing under Section 221(g), consular officials have taken no final action: though nominally 'refused,' Mahin's visa application remains under consideration in a state of administrative limbo that cannot fairly be described as a final determination."); *Farahani v. Laitinen*, No. 1:23-CV-922, 2024 WL 2785043, at *4 (M.D.N.C. May 30, 2024) ("Courts have held that refusals entered for administrative processing are not final, and thus that consular non-reviewability does not bar judicial review of unreasonable delay claims for such visa applications."); *see also Asresash B.T. v. Blinken*, No. 22-cv-1300 (WMW/JFD), 2023 WL 2273158, at *2 (D. Minn. Feb. 28, 2023) (noting that the doctrine of consular non-reviewability only prevents courts from reviewing final visa determinations, and that "[c]ases in administrative processing have not been finally refused"); *Osman v. Clinton*, No. 11-cv-2953 (JNE/SER), 2012 WL 1060053, at *2 (D.

Minn. Mar. 29, 2012) (finding that the doctrine of consular nonreviewability barred judicial review of agency action on a visa application where, after the motion to dismiss was briefed, the State Department "concluded the administrative processing for which [plaintiff's] visa application was originally refused").

Finally, interpreting the refusal-for-administrative-processing approach to be the conclusion of the matter before the agency has the potential to shield from judicial review unreasonable delays that are prohibited by the APA. If the approach in cases like this constitutes a final agency action, the State Department could refuse every visa application for arbitrary reasons, place them into the administrative processing queue, and then take far more time than is reasonable to adjudicate the petition. Nothing in the INA or the relevant implementing regulations suggests that Congress intended such a result.

For these reasons, the Court denies Defendants' motion to dismiss Ms. Awal's unreasonable-delay claim under the APA based on the suggestion that the visa application has already been finally adjudicated.

## ORDER

For the reasons set forth above, **IT IS HEREBY ORDERED THAT** Defendants' Motion to Dismiss (Doc. 8) is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff's due process claim in the Second Claim for Relief is **DISMISSED**. Plaintiff's unreasonable-delay claim under the APA and Mandamus Act in the First Claim for Relief is **DISMISSED** insofar as it is based on Defendants' alleged use of CARRP. Otherwise, Defendants' motion is **DENIED**.

Date: December 4, 2024                    *s/Katherine Menendez*
                                          Katherine Menendez
                                          United States District Judge